_Dillon_
District Judge
Assign. by Clerk's Ofc.

_Hoppe_
Mag. Referral Judge
Assign. by Clerk's Ofc.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 19 2022

JULIA C. DUDLEY, CLERK
BY: _Bacson_
DEPUTY CLERK

For use by Inmates filing a Complaint under

**CIVIL RIGHTS ACT, 42 U.S.C. §1983 or BIVENS v. SIX UNKNOWN NAMED AGENTS
OF FED. BUREAU OF NARCOTICS, 403 U.S.C. §388 (1971)**

Andrew Fields III
Plaintiff full name

04595-033
Inmate No.

v.

**CIVIL ACTION NO.** 7:22 CV 21
(Assigned by Clerk's Office)

FEDERAL BUREAU of PRISONS, ET. Al., WARDEN STREEVAL, AW Goldey, CAPTAIN BAKER
Defendant(s) full name(s) Mitchell Mullins, Neff, Ewing, GAyHeart, Sessons, Fields, SloAN, Nurse Scott,
J. RoBBiNS, Bolling, GARRett, Scholl, Gilbert, BAKER, BARKER, FARMER, DickeNsoN,
lieutenant Laffin, lieutenant Nicholas, lieuten Hamilton, lieutenant Mullins, Hughes, LastER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**\*The mailing address you provide at A: "_where are you now?_" is where the court will send mail to you\***

A. **Where are you now?** Facility and Mailing Address UNiteD STAtes PenitentiARy- LEE

P.O. Box 305   JoNesville, VA 24263

B. Where did this action take place? UNiteD States PenitentiARy - LEE

C. Have you begun an action in state or federal court dealing with the same
facts involved in this complaint?

_____ Yes      **X** No

If your answer to A is Yes, answer the following:

1. Court: N/A

2. Case Number: N/A

D. Have you filed any grievances regarding the facts of this complaint?

_____ Yes      **X** No

1. If your answer is Yes, indicate the result:

_____

Plaintiffs' life is in imminent danger" staff don't provide grievance forms

2. If your answer is No, indicate why:

PAGE 1 of 23 pAGES

# Introduction

This is a civil Rights complaint pursuant to 42 USC § 1331 or Bivens V. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S.C § 388 (1971) here plaintiff Alleges A conspiracy to deprive one of constitutional Rights pursuant to 28 U.S.C § 1985, 1986 conspiracy statues via A meeting of the minds while committing unlawful Cruel and Unusual punishment Acts such As: Denying plaintiff Access to his legal materials, mail Tampering, Retaliatory Excessive Force for engaging in protected conduct of Accessing the courts and other outside prison Agencys, torcher while in Ambulatory Restraints, malicous persecution and placed in punitive Segregation where he received Falsified incident Reports And Subjected to staged gladiator fights here in the United States penitentiary-LEE Special Housing Unit

# CLAIM I

A.) Retalitory Adverse Acts of Cruel And Unusual punishment Excessive Force for Engaging in protected conduct

1. During the Early part of November 2021 plaintiff was issued what is called A high profile inmate movement pass handed out to United States penitentiary-Lee inmates who arrives at the prison and has a history of 205 code incident reports for engaging in a sexual acts towards female staff.

2. On November 9, 2021 plaintiff responded to a letter from the Attorney General of Pennslyvania Mr. Josh Shapiro regarding Another unrelated civil complaint lodged At United States penitentiary-Leiwisburg. (A differant institution)

On November 10, 2021 while at U.S.P-Lee plaintiff was leaving out of his Assigned institution Housing Unit living Quarters going to lunch At the prisons dinning hall and failed to Retrieve his inmate movement pass from out of the Housing Units Officers station upon exiting the unit for lunch.

3. Once plaintiff finished eating lunch he stopped by Medicals evening pill-line hand-out to pick up his medically perscribed meds and returned back to his assigned institutional Housing Unit.

4. As plaintiff entered the Housing Unit he was stopped at the Housing Units front door medal detector where the Unit Officer confronted plaintiff about leaving his inmate movement pass inside the Officers station and not carrying it on his person when leaving the housing Unit and going to eat lunch and to the medical department as plaintiff had just did.

5. At this point the Housing Unit Officer immediatly pressed and activated the emergency duress body alarm on his hand-held radio causing emergency responce Officers and other staff to report to B- Housing Unit in a emergency responce where plaintiff was then escorted to the institutions lieutenants office.

6. Once plaintiff arrived at the lieutenants Office he was seated before a lieutenant Necessary, lieutenant Davis, lieutenant Hamilton, and a escorting Correctional Officer Robbins

7. Officer Robbins began interagating plaintiff about the importance of not leaving out of his assigned institutional Housing Unit and traveling about without his inmate movement pass on his person.

8. Plaintiff in-return explained to Officer Robbins as they reflected back over the rules of the inmate movement pass that he (plaintiff) had just been placed on the inmate movement pass and was new to it and by accident walked out of the Housing Unit for lunch and forgot to retrieve it from out of the Officers station.

9. At this point Officer Robbins began to speak in a irate tone and fashion at which point lieutenant Davis rudly interrupted and said to plaintiff "Why are you even talking? And plaintiff stated in-return "Because I am a man" and then plaintiff asked lieutenant Davis" Why are you talking?

10. At this point lieutenant Hamilton interrupted and said "Why are you disrespecting staff", plaintiff then stated "I am not disrespecting staff and then lieutenant Davis said "You just failed this institutions program and at this point" lieutenant Hamilton said "Aloud" Take him to the trap! Get his head Right! Plaintiff then said "I have'nt done anything to go to the hole (S.H.U)

11. At this point Officer Robbins gave plaintiff a direct order to stand up And place his hands on the wall And plaintiff complied. Officer Robbins began to pat search plaintiff And discovered that plaintiff had five legal documents inside his button up Khaki prison shirt that he was wareing" Along with plaintiffs perscription eye glasses.

12. Officer Robbins Removed the legal papers At which point plaintiff began to explan what thus papers where And that they where not contra band as officers Robbins quickly placed hand-cuffs on plaintiff As if he wasn't listening to plaintiff." (Plaintiff NEVER Received these legal documents back)," Nor did he have his perscription glasses Returned.

13. Officer Robbins Escorted plaintiff towards the front exit door of the lieutenants office where plaintiffs' shoes where sitting on the floor As he was told to take them off upon entering the lieutenants office during the pat search." (Plaintiff NEVER received his shoe back")

14. Officer Robbins walked plaintiff out of the lieutenants office" Not giving plaintiff the opportunity to put his shoes back on And walked plaintiff out into the Main Corridor And Around the corner.

[ First - incident of Excessive force ]

15.  Once plaintiff was escorted just Around the Corner of the lieutenant's Office " plaintiff remembers slightly Glancing towards his Right shoulder " curious As to the direction he was walking going to (S.H.U) And before he could focus back Around straight Ahead " Officer Robbins begAn punching plaintiff in the face with closed fists Repeatedly until plaintiff dropped to the floor where he was stomped by steel toe boots, Kicked And punched in the face Repeatedly by Officer Robbins And other unknown Officers until he semi-fell unconsious.

16.  Plaintiff Asserts that once he regained consciousness All he could Remember seeing was A Mrs. Hall As he was being placed in what is called A pro stryker wheel chair And Escorted to the Special Housing Unit. Plaintiff was later written up on A Falsified incident Report (please see Exhibit _A_ )(page 23)

[First - EXCESSIVE force INCIDENT IN ApplicatioN of Ambulatory Restraints]

17. ONCE plaintiff ARRiVED iN the SpeciAL Housing UNit he wAS plACED IN A OBSERVATION CELL by (S.H.U) lieuteNANT MulliNS who wAS ACCompANiED by Officer Neff, Officer GAYHEART, Officer fields, Officer Mitchell, Officer EwiNG ANd other JohN DoE Officers WHERE plaintiff wAS CURSTED, pusHED RoughfullY ANd shoVED FACE first RAMMED iNto the wAll. Thus STAFF theN ExitED the CELl.

18. After plaiNtiff wAS SECuRED iNside the OBSERVATION tANK for About (30) miNutes A feMALE Officer "(Ms. Mitchell) wALkED over to the OBSERVATION CELL ANd took A look iNside ANd theN wAlkED over towards the Officers StatioN coNtRoL Bubble ANd YellED out iN A soft spokEN toNE ᵗᵒ "WE got A boNER"! iNMate fields is iN the OBSERVATION tANk MASTERbAtiNG "While iN AmbulAtory RestRAiNts.

19. At this poiNt plaiNtiff OBSERVED lieuteNANt MulliNS Exit his office ANd sigNAlED giviNg oRdeRs to All (S.H.U) Officers As they gathERED ARouNd iN A huddlE. ONE Officer quickLy gRAbbED A bigg heAVEY fiberglass (plExi-glass) security shiELd ANd thus Officers wAlkED towards the ObservatioN CELL wheRE plaiNtiff wAS beiNG hELd iN SECuRED AmbulAtory RestRaiNts ANd lEg RestRaiNts ARouNd his ANkLEs.

20. At this point All of thus Officers gathered outside the front
ENTRANCE of plaintiffs' Observation cell cursing, threatening And
calling plaintiff profound NAMES As lieutenant Mullins shouted to
plaintiff A direct order to face the back wall And get down on his
KNEES And don't look back at them.

21. As these staff rushed in "plaintiff could HEAR SOMEONE yell very
loudly" Stay down ! And All of a sudden "Boom" plaintiff could hear
boots stomping INN As if lots of Officers Rushed towards
plaintiff All At once And slammed the security shield into the back
of plaintiffs' head RAMMing plaintiffs' face into the wall At sudden
impact causing his NOSE And teeth to bang into the wall KNOcKing
plaintiffs' front tooth loose .

22. As plaintiffs' face was smashed up Against the wall with extreme
presser he was being punched in the face on the left side of his
face by Officers Ewing with clutched fists And punched in the
face with clutched fists by Officer Neff on the Right side of his
face

23. Thus Officers began cursing And yelling At plaintiff "stating,"
So you like to jack your dick ? Well this is for "Officer Mitchell
And both Officers on EAch side (left And Right) Officer Neff
And Officer Ewing began KNEELing plaintiff in the groin AREA
Repeatedly hard.

24. At this point lieutenant Mullins unfasined the hand-restraints And took the black security box off in order to place them back on tighter And then lieutenant Mullins Attempted to Raise the belly chain high Above plaintiffs belly And waistline but it wouldn't Adjust properly "so thus lieutenant Mullins began to pull it tightly As possible Around plaintiffs waistline As he stated", I am going to kill you" I am going to let you out of these restraints to walk Around And then I am going to fuck you up Again! And put you back in them.

25. lieutenant Mullins informed plaintiff that he would remain in the Ambulatory restraints for a (24) hour time frame And As lieutenant Mullins was speaking to plaintiff Another Officer was twisting plaintiffs Right leg Appling extreme presser As if the Officer was treing to break plaintiffs Ankle And then Another Officer began kicking plaintiff in the hamstrings with steel toe boots Repeatedly hard As plaintiff Resumed in a kneeling position.

26. lastly, the Officer holding the security shield Rammed the back of plaintiffs head with the shield causing plaintiffs face to smash into the wall At full impact And All thus Officers exited the Observation tank.

[ SECOND - Ambulatory Restraint (2) hour check ]

27. Two hours later Special Housing Unit Officers began to perform Another (2) hour Restraint check of the Ambulatory Restraints plaintiff was secured in.

28. Lieutenant Mullins Accompanied by Officer Mitchell, Officer Neff, Officer Gayheart, Officer Fields, Officer Ewing, Nurse Scott And other unidentified John Doe Officers gathered outside plaintiffs Observation cell As lieutenant Mullins gave plaintiff A direct order to face the wall And get on his knees.

29. As plaintiff stared At the wall he listened As Officers gathered in what Appeared to sound like A train formation with the Officer in the front of the line holding the heavey plexi-glass shield.

30. As the door opened wider thus Officers sound As if they partially ran towards plaintiff And rammed the back of plaintiffs' head with the shield causing plaintiffs' face to collide into the wall At full impact.

31. Lieutenant Mullins checked the restraints And just As he finished" A Nurse Scott began grabbing plaintiffs' fingers to run A medical blood temperature Assesment.

32. As NURSE Scott begAN placing the tempeRture check moniToR oN plaintiffs FingeR NuRse Scott begAN bending plaintiffs FingeRs backwaRds As iF he was tRing to bReak them while "stating," you told ME ON youR WAY OVER hERE to the (S.H.U) thAt the bRuise ON youR Right ARM WAS A NEW bRuise fRom this RecenT iNcideNT ANd siNce you lied to me youR NoT getting youR pills.

33. As NuRse Scott Finished the mediCAL AssesmeNt ANotheR oFFiceR WAS bending plaintiffs hANds backwaRds As iF he was tRing to bReak them" At this point stAff cuRsed plaintiff moRe theN exited the ObseRVAtioN cell ANd PlaintiFfs AttempT to RepoRt seVRE tRauma head Aches ANd swelliNg ARound his HEAd wheRe to No AVAil.

⌐ Third — AmbulAtoRy RestRAint Check ANd UNReAsoNAble AmounTs of EXCESSIVE FoRce ⌐

34. ANotheR (2) houR time FRAme AlApsed siNce The lAst RestRAint check which meANt it WAS time FoR ANotheR RESTRAINT check.

35. At this point a lieutenant Nicholous, Officer Dickenson, Officer Garrett, Officer Scholl, and other unidentified John Doe Officers gathered at the front door of the Observation cell as lieutenant Nicholous gave plaintiff a direct order to turn and face the wall and kneel down.

36. As plaintiff complied to thus orders plaintiff was so tramatized with having his head and face banged into the wall this time around he decided to tilt his head to the left for comfort and to prevent from having his neck to snap broke.

37. As the Observation cell door sqweeked open plaintiff could hear the officers keys and boots raddle up to take charge towards plaintiff in a fast walking pace and at this point plaintiffs head was banged with the heavey plexiglass shield to where his face rammed into the wall and was pent up against the wall while the officer holding the shield placed lots of weight on the shield handles in order for the shield to cutt into the back of plaintiffs' knees' while plaintiff remained in the kneeling position causing sharp pain in the back of plaintiffs' knees and upper calf areas of his legs.

38. At this point A lieutenant Nicholous began to speak to plaintiffs' in A Angered threatening tone," As lieutenant Nicholous spoke in A low whispering threatening tone questioning plaintiff About the masterbation on female staff Accusation From earlier," two officers holding down each of plaintiffs' kneeling legs began to twist his feet backwards As if to try And break them.

39. lieutenant Nicholous made more threats to plaintiff About killing plaintiff if plaintiff exposed his penis to Any other female staff And Assured plaintiff that it was going to be A long Night For plaintiff during the (24) hour Ambulatory Restraint period. At this moment lieutenant Nicholous And his officers Exited the Observation cell.

## FourtH - Ambulatory Restraint Check

40. As Another (2) hour time frame went by "lieutenant Nicholous Returned to the Observation cell Accompanied by Officer GARRETT, Officer Scholl, Officer Dickenson, And other unidentified John Doe Officers lieutenant Nicholous gave plaintiff A direct order to get on his knees And Face the wall At which point plaintiffs' Face And head was banged into the wall from behind" lieutenant Nicholous then

41. began to kick the back of plaintiffs' thighs extremly hard" plaintiff was threatened more and then Thus officers exited the Observation tank.

[
Fith - Ambulatory Restraint check And unreasonable
    Amounts of Excessive Force
]

42. As Another (2) hours Alapsed it was yet Again the time for Another horrifying Restraint check As the officers work shift had changed And plaintiff Noticed a lieutenant Laffin" if name spelled correctly "Accompanied by Officer Baker, Officer Barker, Officer Gilbert, Officer Sloan, Officer Farmer, And other Unidentified John Doe officers.

43. Thus staff gathered outside the Observation cell As lieutenant Laffin gave plaintiff A direct order to face the wall And kneel down", plaintiff complied" And Again plaintiffs' head was pushed up against the wall from behind by the officer carring the plexiglass shield but to plaintiffs surprise the impact of force wasn't as violently Applied causing his face to harshly collide into the wall As usual.

44. As lieutenant Laffin began to speak "one of the officers began to step on plaintiffs' Right foot with some steel toe boots placing Alot of weight with presser while twisting his step deeper into the bottom of plaintiffs' foot As if this Officer was stomping out A cigarette butt on the ground.

45. Plaintiff received threats of being placed inside A (4) point Restraint cell location that didn't have A CAMERA And was told in so many words that if he (plaintiff) litigated on these issues one of the female staff would lie on him About Exposing his penis in her view And that plaintiff would be placed in the (4) point Restraint cell Next time where he would get the shit beat out of him. At this moment lieutenant Laffin And thus Officers Exited the Observation Cell.



Sixth - Ambulatory Restraint Check

46. lieutenant Laffin, Officer Gilbert, Officer Baker, Officer Barker, Officer Sloan, And other unidentified John Doe Officers Returned to the Observation cell perform Another (2) hour Restraint check once thus staff gathered At the door "lieutenant Laffin gave plaintiff a direct order to turn around And face the wall And kneel down.

47. Once lieutenant Laffin and thus staff entered the observation cell officer Gilbert began talking to plaintiff as lieutenant Laffin was standing on the back of plaintiffs' calfs and bouncing up and down on them.

48. Officer Gilbert began to explain to plaintiff that he looked plaintiffs' files up and that plaintiff had a history of code 205 engaging in a sexual acts and then called plaintiff a sex offender. These officers made a few more death threats towards plaintiff while lieutenant Laffin continued standing and bouncing on the back of plaintiffs' calfs while plaintiff was kneeling faceing the wall and shortly afterwards lieutenant Laffin and these officers exited the observation cell.

[ Seventh - Ambulatory Restraint check ]

49. During the final (2) hours of plaintiffs' (24) hour Ambulatory restraint hold morning shift officers removed plaintiff from thus belly chain with black security box Attached and leg restraints and secured plaintiff in cell A-107. (A regular cell) with no further incident.

[Conclusion]

50.  Plaintiff avers that thee entire (24) hour time frame he remained in the Ambulatory restraints he was subjected to UNREASONABLE Amounts of EXCESSIVE force, death threats And torcher which caused plaintiff physical And emotional discomfoet, psycological impairament, SEVER HEAD Aches with swelling Around his heAd And overall body pain from heAd to toe. From which he was denied medical treatment.

## Claim II

B)  Denying one the Right to seek Redress via the U.S.P-Lee grievance proceedure, Denying plaintiff Access to his legal materials And legal forms (PLRA) handed out by the institution, And Mail Mishandling, And delayed transfering.

1.  Finally, plaintiff Asserts that his Unit Supervisors contributed their part in thus conspiracy to deprive plaintiff of constitutional Rights by Refusing to Respond to plaintiffs' Action Requests to staff whereas All Special Housing Unit inmates must First go through their Unit Supervisors via Special Requests to staff placing thus staff on Notice that they have A pending legal CASE And needs to be given|issued his legal matierals property from the Special Housing Units property Officer Bolling

2. Plaintiff Alleges that he has spoken with the (S.H.U) property officer several times About tring to retrieve the necessary legal documents from out of his stored property bend But thus (S.H.U) property officer tells plaintiff that he has went as far as emailing plaintiffs unit supervisors regarding plaintiff having a open case and needing his legal matierals to litigate his court cases but (S.H.U) property officer Bolling doesn't have any responces back from plaintiffs' unit supervisors regarding plaintiff needing his legal matierals to meet legal deadlines. [Plaintiff is also being denied his perscription eye glasses]

3. Plaintiff also Alleges that as he continued to stopp Mr. Bolling at his cell door inquiring About being issued his legal documents property officer Bolling would then speak with plaintiffs cellmate in hinted codes and Apparently gave guess tures as to place a hit on plaintiff by instigating a staged gladiator fight between plaintiff and his cellmate on November 22, 2021 whereas plaintiffs cellmate took a swing at plaintiff for no Apparent reason which lead to the both of them getting pepper sprayed And plaintiff was then written up by property officer Bolling on a falsified incident report saying plaintiff initiated the fight And was the aggressor whom assaulted his cellmate (see Exhibit B) (page 22)

4. Plaintiff Alleges that his Unit Supervisors Mrs. Hughes And Mr. laster don't Allow plaintiff the opportunity to Retrieve grievance forms or Administrative Remedies, etc which is hindering his Right to file complaints And Access the courts And other Agencies. Also (delayed transfering) on punitive Seg.

5. Lastly, Warden Streeval - the Warden At U.S.P- LEE, A.W Goldey - the Associate Warden At U.S.P- LEE, And Captain Baker - the Captain At U.S.P- LEE," All have been placed on Notice before And After the claims in plaintiffs' complaint has Arised And All thee Above mentioned U.S.P-LEE staff hereins conduct via Verbal complaints, Administrative Remedies, staff After incident Reports And memorandums And have failed to React or correct their staff |Employees' unlawful Actions," Nor have Warden Streeval made Any Attempts to thus provide training to thus Federal Bureau of prisons Employees.

**E.** Statement of Claim(s): State briefly the facts in this complaint. Describe what
action(s) each defendant took in violation of your federal rights and include the
relevant dates and places. **Do not give any legal arguments or cite any cases
or statutes.** If necessary, you may attach additional page(s). Please write
legibly.

Claim #1 – Supporting Facts – Briefly tell your story without citing cases or law:

CRUEl And USUSUAl PUNishmENt - REtAlitoRY Acts of EXCESSIVE foRCE

FoR ENGAGiNG iN pRotEctEd coNduct (plEASE SEE ClAim I) FiRst, SEcoNd

Fouth, Fith ANd FouRtHteeth AmENdmENt Rights ViolAtioNS.

Claim #2 – Supporting Facts – Briefly tell your story without citing cases or law:

DENYiNG oNE thE Right to SEEk REdRESS ViA thE U.S.P-LEE gRiEVANcE

pRocEEduRE, DENYiNG plAiNtiFF AccESS to his lEgAl mAtERiAls ANd

lEgAl foRms ( PlEASE SEE ClAim II ) FiRst SEcoNd fouth, Fith, FouRthtEEth
CoNStitutioNAl Rights ViolAtioNS )

**F.** State what relief you seek from the Court. Make no legal arguments and cite no
cases or statutes. PlAiNtiFF iS SEEkiNG **$15,000,000** ANd No cENtS
iN CompENSAtoRY dAmAgES foR iNjuRiES SuStAiNEd ANd immEdiAtE RElEASE
FRom F.B.o.P CuStodY

**G.** If this case goes to trial do you request a trial by jury?   Yes ✓   No _____

**H.** If I am released or transferred, I understand it is my responsibility to immediately
notify the court <u>in writing</u> of any change of address *after* I have been released or
transferred or my case may be dismissed.

DATED: JAN. 7, 2022          SIGNATURE: Andrew Fields III

VERIFICATION:
I, Andrew Fields III , state that I am the plaintiff in this action and I
know the content of the above complaint; that it is true of my own knowledge, except as to those
matters that are stated to be based on information and belief, and as to those matters, I believe
them to be true. I further state that I believe the factual assertions are sufficient to support a
claim of violation of constitutional rights. Further, I verify that I am aware of the provisions set
forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner
has, on three or more occasions, while incarcerated brought an action or appeal in federal court
that is dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon
which relief may be granted, unless the prisoner is imminent danger of serious physical injury. I
understand that if this complaint is dismissed on any of the above grounds, I may be prohibited
from filing any future actions without the pre-payment of the filing fees. I declare under penalty of
perjury the foregoing to be true and correct.

DATED: JAN. 7, 2022          SIGNATURE: Andrew Fields III



**BP-A0288**
## INCIDENT REPORT
Dept. of Justice / Federal Bureau of Prisons

| Part I - Incident Report | | | |
|---|---|---|---|

| 1. Institution:   **LEE USP** | | Incident Report Number: **3569802** | |
|---|---|---|---|
| 2. Inmate's Name <br> **FIELDS, ANDREW** | 3. Register Number <br> **04595-033** | 4. Date of Incident <br> **11-22-2021** | 5. Time <br> **0710 hrs** |
| 6. Place of Incident <br> **SHU CELL #106** | 7. Assignment | 8. Unit <br> **SHU** | |
| 9. Incident <br> **224 – ASSAULTING W/O SERIOUS INJURY. 307 – REFUSING TO OBEY AN ORDER.** | | 10. Prohibited Act Code(s) <br> **224  307** | |

11. Description Of Incident

(Date: **11-22-2021**   Time: **0710 hrs**   staff became aware of incident)

On November 22,2021 at 7:10AM, I was assisting other staff members in feeding inmates for the morning meal. Upon arrival to cell # 106 I saw two inmates standing in the cell. Cell # 106 is assigned to Inmate Fields, Andrew # 04595-033 and Inmate Aguilar, Kevin # 45730-007. Inmate Fields was standing at the shower when I arrived to the cell and Inmate Aguilar was standing at the cell door. As I placed the trays on the tray slot, Inmate Fields came up behind Inmate Aguilar and punched him in the back of the head with a closed fist. At this time, Inmate Aguilar fell to the ground and Inmate Field continued to hit Inmate Aguilar in the head and upper body area. Repeated direct orders to stop fighting were ignored and responding staff delivered O.C. spray in order to gain control of the situation. Once both inmates complied with orders to submit to hand restraints, the cell door was opened and both inmates were taken to SHU Holding cells for decontamination. I have no injuries to report.

| 12. Typed Name/Signature of Reporting Employee <br> **J Bolling** | | 13. Date And Time <br> **11-22-2021 0733 hrs** | |
|---|---|---|---|
| 14. Incident Report Delivered to Above Inmate By <br> (Type.Name/Signature) | | 15. Date Report <br> Delivered <br> 11/22/21 | 16. Time Report <br> Delivered <br> 9:06pm |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

Prescribed by P5270                                    Replaces BP-S288.052



BP-A0288
Dept. of Justice / Federal Bureau of Prisons

# INCIDENT REPORT

## Part I – Incident Report

| 1. Institution:   **LEE USP** | | Incident Report Number: **3566231** | |
|---|---|---|---|
| 2. Inmate's Name **FIELDS, ANDREW** | 3. Register Number **04595-033** | 4. Date of Incident **11-10-2021** | 5. Time **1147 hrs** |
| 6. Place of Incident **Main Corridor** | 7. Assignment **SHU UNASSG** | 8. Unit **B** | |
| 9. Incident **224 – ASSAULTING W/O SERIOUS INJURY (Attempting).** | | 10. Prohibited Act Code(s) **224A** | |

11. Description Of Incident

(Date: **11-10-2021**   Time: **1147 hrs**   staff became aware of incident)

On Wednesday, November 10, 2021 at approximately 11:47am, upon escorting inmate Fields, Andrew # 04595-033 to the Special Housing Unit inmate Fields turned towards me and attempted to strike me with his head. Specifically, upon escorting inmate Fields through the main corridor towards the special housing unit, inmate Fields made several threats towards myself and escorting staff. Inmate Fields states that  This is bullshit, don t worry I'm gonna get mine, I'm gonna fuck you up  at this moment inmate fields turned towards me and attempted to strike me with his head. I then immediately placed inmate Fields on the ground and assisted escorting staff in the application of hand and leg restraints. After calling for assistance via radio I assisted responding staff in placing inmate Fields in the Pro Stryker Straint chair and then escorted him to the special housing unit. Once in the special housing unit I assisted staff in the application of ambulatory restraint for inmate Fields. Specifically I controlled the right upper appendage during the application of restraints. I have no loss of equipment or injuries to report.

| 12. Typed Name/Signature of Reporting Employee **J Robbins** | 13. Date And Time **11-10-2021 1241 hrs** | |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature) | 15. Date Report Delivered **11/11/21** | 16. Time Report Delivered **1245** |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

Prescribed by P5270                                    Replaces BP-S288.052

Mr. Andrew Fields III Reg. No. #24595-083
UNITED STATES PENITENTIARY - LEE
P.O. Box 305
JONESVILLE, VA 24263



7021 1970 0001

CLERK, U.
210 F

LegaL MaiL
18. U.S.C § 1701, 1702
Criminal Penalty Involked
For Interferance



United States District Court
Franklin Road, SW, Suite 540
Roanoke, VA 24011-2208