IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANDREW FIELDS, III, )<br>    Plaintiff, )<br>) Civil Action No. 7:22-cv-00021<br>v. )<br>) By: Elizabeth K. Dillon<br>FEDERAL BUREAU OF PRISONS, *et al.*, )    United States District Judge<br>    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Andrew Fields, III, an inmate in the custody of the Bureau of Prisons (BOP) and proceeding *pro se*, filed this civil rights complaint, presumably relying on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He has paid the full filing fee and thus is responsible for effecting service. But Fields has filed a motion requesting that the United States Marshal Service execute service of process for him, which is pending. (Dkt. No. 33.)

Additionally, and despite Fields's payment of the full filing fee, his complaint is subject to screening under 28 U.S.C. § 1915A(a). Under that statute, the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint," if it is frivolous, fails to state a claim on which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2).

In conducting its review, the court must give the pleadings a liberal construction and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court

can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Applying these standards to Fields's complaint, the court determines that it fails to state a claim for which relief can be granted. Many of his allegations fail to state a constitutional violation, but the court also concludes that there is no damages remedy under *Bivens* for his claims. Accordingly, this case will be dismissed, and Fields's motion requesting service (Dkt. No. 33) will be denied as moot.

## I. FACTUAL BACKGROUND

Fields names as defendants the Bureau of Prisons (BOP), the Warden of USP Lee, and more than two dozen other officers or personnel at USP Lee. In an introductory paragraph to his complaint, he explains that he is alleging a conspiracy by defendants to deprive him of his rights by

> committing unlawful cruel and unusual punishment acts such as: denying plaintiff access to his legal materials, mail tampering, retaliatory excessive force for engaging in protected conduct of accessing the courts and other outside prison agencies, torture while in ambulatory restraints, [and] malicious prosecution. [A]nd he was placed in punitive segregation where he received falsified incident reports and [was] subjected to staged gladiator fights in the Special Housing Unit.

(Compl. 2, Dkt. No. 1.)[1]

Fields lists two legal claims, the first of which appears to have sub-parts. He describes his first claim as "Cruel and Unusual Punishment-Retaliatory Acts of Excessive Force for Engaging in Protected Conduct." (*Id.* at 21.) He describes his second claim as "Denying One the Right to Seek Redress via the U.S.P.-Lee Grievance Procedure, Denying Plaintiff Access to

---

[1] The court has corrected spelling and grammatical errors when quoting from the complaint.

His Legal Materials and Legal Forms." (*Id.*) As to both claims, he alleges that defendants violated his rights under the "First, Second, Fourth, Fifth, and Fourteenth Amendments." (*Id.*)

In terms of specific facts, Fields alleges first that he was falsely accused of misconduct, apparently in retaliation for sending a letter complaining about another institution. Then, based on the false charge, he was taken to the Special Housing Unit (SHU), also known as "the hole." As officers handcuffed him, they confiscated property, including legal documents, prescription glasses, and shoes, which he never received back. He claims that, while he was being escorted, a group of officers began punching him in the face with closed fists repeatedly until he fell to the floor. They then stomped on him with steel-toe boots and kicked and punched him in the face repeatedly, until he was semi-conscious. (*Id.* at 3–7.)

According to Fields, officers also used excessive force when placing him in the SHU cell and later when placing him in restraints, after a female officer falsely told other officers Fields was in his observation cell masturbating. Then, each time officers came into his cell to check on his ambulatory restraints, they used excessive force again, including one incident where his face was slammed into the wall and his tooth was knocked loose. After the incident was over, he claims in conclusory fashion that he was denied medical treatment for the results of the "torture," which included severe headaches with swelling around his head and overall body pain. (*Id.* at 18.)

In his second claim, Fields asserts that he was denied the right to seek redress via USP Lee's grievance procedure, was denied access to his legal materials and legal forms, and that certain defendants engaged in mail mishandling and "delayed transferring." (*Id.*) He also has not received back some of the other property that was taken from him, such as his prescription eye glasses. (*Id.* at 19.)

3

II.  DISCUSSION

**A.  Many of Fields's Allegations Fail to State Any Cognizable Constitutional Claim.**

Many of Fields's allegations are insufficient to state a violation of any constitutional rights.[2]  For example, he claims that defendants interfered with his ability to file grievances. While allegations of such inference may be relevant to whether he appropriately exhausted his administrative remedies, they fail to state a violation of his constitutional rights.  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017) (explaining that inmates do not have a "constitutional entitlement to and/or due process interest in accessing a grievance procedure").

Fields also alleges that his legal property was taken or legal mail was tampered with, and he asserts that his access to court was hampered, presumably in violation of his First Amendment rights.  But because he does not allege that any particular lawsuit or case was affected by the interference with his mail or by the loss of his legal papers, he fails to state a First Amendment violation based on a denial of access to courts.  *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) (noting that to state a claim, a plaintiff must allege facts to show that defendants actually "hindered his efforts to pursue" a nonfrivolous legal claim); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (holding that the plaintiff must identify the lost legal claim in his complaint, along with the potential remedy that claim sought to recover).

Lastly, Fields's brief allegations that he was denied medical treatment fail to state a claim because he has not set forth sufficient details to show that any particular defendant acted with deliberate indifference to a serious medical need, as required to state an Eighth Amendment claim of deliberate indifference.  *See Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019)

---

[2] Regardless, and as discussed in the text with regard to his excessive force and retaliation claims, the court concludes that there is no *Bivens*-type remedy for these other claims, either.  Thus, they are subject to dismissal on this ground, as well.

4

(describing elements of claim). Fields names a nurse (Nurse Scott) in his complaint, but he alleges only that Scott conducted a temperature check of him while he was restrained and bent Fields's fingers backward "as if he was trying to break them." (*Id.* at 12.) Scott also told Fields that because Fields lied when he told Scott the bruise on his right arm was a new bruise from the recent incident, Fields would not be getting his pills. (*Id.*) Fields does not state what "pills" or medications Scott was talking about, what conditions those pills were treating, or whether he was, in fact, denied any of his medications.

Fields also states, in two different places in the complaint, that he sought medical help and was denied it, but he does not identify any person from whom he sought that help, what he said, or what was done in response. In the first instance, he simply says that as unidentified staff left his cell, his "attempt to report severe trauma[,] headaches[,] and swelling around his head [was] to no avail." (*Id.*) In the second, he similarly states that he had injuries from the incidents, including severe headaches with swelling around his head and overall body pain from head to toe and that "he was denied medical treatment." (*Id.* at 18.) These summary statements do not implicate any individual in the denial of treatment, and they do not state an Eighth Amendment claim.[3]

---

[3] As to any deliberate indifference claim, the court recognizes that the Supreme Court has found an implied damages remedy for such an Eighth Amendment claim in *Carlson v. Green*, 446 U.S. 14 (1980). Thus, it is possible that such medical claims do not arise in a new context and could be cognizable. There are, however, differences between *Carlson* and this case, including that the prisoner in *Carlson* died as a result of the failure to treat his asthma, was given the wrong treatment, and alleged that he was kept in an inadequate medical facility. These differences may be enough to show a new context. *See, e.g.*, *Washington v. Fed. Bureau of Prisons*, No. CV 5:16-3913-BHH, 2022 WL 3701577, at *8 (D.S.C. Aug. 26, 2022) (holding that federal prisoner's Eighth Amendment claims of deliberate indifference to ongoing, non-life-threatening medical issues did not state a cause of action after *Egbert*); *McNeal v. Hutchinson*, No. 2:21-cv-3431-JFA-MGB, 2022 WL 16631042, at *9 (D.S.C. Nov. 2, 2022) (agreeing with the reasoning of *Washington* and applying it to a case where the plaintiff did not allege a medical emergency, but instead involved "chronic, non-fatal condition"), *appeal docketed* (4th Cir. Nov. 15, 2022). At this juncture, the court need not resolve whether Fields's medical claims arise in a new context because—as discussed in the text—Fields's allegations fail to identify any particular defendant who violated his Eighth Amendment rights by denying him medical care.

Aside from the claims just addressed in this section, Fields's claims are either excessive force claims under the Eighth Amendment or First Amendment retaliation claims. As the court discusses next, neither type of claim entitles him to a damages remedy.

**B. There Is No Implied Damages Remedy for Fields's Excessive Force and Retaliation Claims.**

    **1. The framework for determining whether the court should find an implied cause of action**

This court recently addressed, in an opinion entered after full briefing by the parties—that there is no *Bivens*-like remedy for excessive force claims brought against BOP Officers. *Jean v. Smallwood*, No. 7:20-CV-00415, 2022 WL 17969091 (W.D. Va. Dec. 27, 2022). As discussed in *Jean*, the Supreme Court first recognized an implied cause of action for a constitutional violation by federal officers in *Bivens*, where it held that there was an implied claim for money damages available under the Fourth Amendment where the plaintiff alleged that federal officers had searched his apartment and arrested him without a warrant or probable cause and used unreasonable force in doing so. *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019) (describing *Bivens*). Since then, the Court extended *Bivens* to other factual situations only in two cases:

> In the first, *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the equal protection component of the Fifth Amendment's Due Process Clause provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. *See id.* at 248–49. And in the second, *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal jailers to treat his asthma. *See id.* at 19.

*Tun-Cos*, 922 F.3d at 521. The Supreme Court has not recognized a *Bivens*-type remedy outside of those contexts, however, and has repeatedly declined to do so "in *any* additional context." *Id.*

(collecting authority). Accordingly, the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 522 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Most recently, the Supreme Court refused to recognize a *Bivens*-type remedy in a case that was factually very similar to *Bivens*. *Egbert v. Boule*, 142 S. Ct. 1793, 1803–04, 1807–09 (2022); *id.* at 1815 (Sotomayor, J., concurring in the judgment in part and dissenting in part) ("At bottom, Boule's claim is materially indistinguishable from the claim brought in *Bivens*."); *id.* at 1810 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself."). In doing so, the Supreme Court made clear that the types of claims for which there are a *Bivens*-type remedy is extremely limited. *See Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril."). Indeed, in his concurrence, Justice Gorsuch suggested there could be no further cases recognizing a cause of action under the Court's reasoning and test. *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring) (stating that "it's hard to see how" any case "ever could" satisfy the standard set forth by the Court and that "sometimes, it seems, 'this Court leaves a door ajar and holds out the possibility that someone, someday might walk through it' even as it devises a rule that ensures 'no one . . . ever will.'") (citation omitted).

The Fourth Circuit recently relied on *Egbert* and other authority in ruling that a BOP inmate's Eighth Amendment claims based on the conditions of his confinement were different from any of the prior Supreme Court decisions "finding a *Bivens* cause of action and that the relief he seeks in this new context should be provided by Congress, if at all." *Tate v. Harmon*, 54 F.4th 839, 841 (4th Cir. 2022). The *Tate* court discussed at length the Supreme Court's

7

emphasis on separation-of-powers principles in this context. *Id.* at 843–44. As the Supreme Court has stated, in the years since *Bivens*, the Court has "come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Id.* at 844 (citing *Egbert*, 142 S. Ct. at 1802). Indeed, the *Egbert* Court observed that "creating a cause of action is a legislative endeavor" and "the Judiciary's authority to do so *at all* is, at best, uncertain." *Id.* (citing *Egbert*, 142 S. Ct. at 1802–03 (emphasis added by *Tate*)).

The *Tate* court followed the two-step analysis discussed by the Supreme Court and in the Fourth Circuit's prior cases, including *Tun-Cos*. At the first step, the court should decide whether the claims arise in a "new *Bivens* context." *Tun-Cos*, 922 F.3d at 522 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857–60 (2017)). A context is new when "different in a meaningful way" from the three previous *Bivens* cases. *Tate*, 54 F.4th at 844 (quoting *Ziglar*, 137 S. Ct. at 1859)). The *Tate* court emphasized that "'new context' must be understood broadly [and] that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Id.* at 846 (citing *Egbert*, 142 S. Ct. at 1805).

"If the context is *not* new . . . then a *Bivens* remedy" is available. *Tun-Cos*, 922 F.3d. at 522–23 (emphasis in original). If the context is new, then the court turns to the second step, which requires it to determine whether "special factors counsel[] hesitation" in recognizing an implied cause of action. *Ziglar*, 137 S. Ct. at 1857 (citations omitted).

In *Egbert*, the court observed that "those [two] steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. Indeed, if "there is *any* rational reason (even one) to think that *Congress* is better suited" to resolve the cost-benefit analysis of letting a damages action lie, an

implied action is precluded. *Id.* at 1805. The *Tate* court recognized this conflation of the two steps, as well, explaining that "in *Egbert*, . . . the Court recognized a substantial overlap between the factors relevant to" the two steps, "often leading to an analysis that addresses just [that] single question." *Tate*, 54 F.4th at 847–48.

**2. Fields's excessive force claims arise in a new context.**

Applying this analysis to Fields's excessive force claims, the court has no difficulty in concluding that these claims arise in a new context, as the Supreme Court has never ruled that a damages remedy exists for claims of excessive force by BOP officers against an inmate. As noted above, the context could be "new" for a reason as simple as "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches . . . ." *Tun-Cos*, 922 F.3d at 523 (quoting *Ziglar*, 137 S. Ct. at 1859–60)). Put differently, "the new-context inquiry is easily satisfied." *Ziglar*, 137 S. Ct. at 1865. As the *Tate* court cautioned, "courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*." 54 F.4th at 845.

None of the three cases—*Bivens*, *Davis*, or *Carlson*—involved Eighth Amendment claims alleging an improper use of force by BOP officers (or related bystander liability claims). Moreover, the last distinction referenced above—"the risk of disruptive intrusion by the Judiciary into the functioning of other branches"—is particularly important here. Although he alleges that the disciplinary charges against him were false, Fields's complaint makes clear that at least the reason given for his being restrained was his own behavior and that the restraints

9

were used as a disciplinary measure. If the court were to create a judicial remedy here, it would be interjecting the judiciary into decisions about when and under what circumstances restraints may be used. It also would be creating potential liability for assaults by BOP officers, especially as related to the use of restraints. These are issues that could have far-reaching consequences to the daily operation of BOP facilities. *Cf. Egbert*, 142 S. Ct. at 1803 (noting that "a court likely cannot predict the systemwide consequences of recognizing a cause of action under *Bivens*"); *see also Jean v. Smallwood*, No. 7:20-CV-00415, 2022 WL 17969091, at *5 (W.D. Va. Dec. 27, 2022) (noting same).

   3. **Fields's retaliation claims arise in a new context.**

Similarly, Fields's claims that the excessive force was the result of retaliation and that he was given false disciplinary charges in retaliation for "accessing the courts and other outside prison agencies" also arise in a "new context." Indeed, in *Egbert*, the court also addressed a retaliation claim, although it arose in a different factual scenario. The *Egbert* court squarely held that "there is no *Bivens* action for First Amendment retaliation." 142 S. Ct. at 1807. Similarly, the Fourth Circuit has recently declined to extend *Bivens* to a First Amendment claim. *See Dyer v. Smith*, __F.4th __, 2022 WL 17982796, at *3 (4th Cir. Dec. 29, 2022) (agreeing with district court that a First Amendment claim arose in a new context, in part because "[t]he Supreme Court has 'never held that *Bivens* extends to First Amendment claims'") (citations omitted).

   4. **Special factors counsel against recognizing an implied cause of action because Congress is better suited to make the determination of whether one is appropriate and desirable.**

As previously explained, once a claim is determined to arise in a new context, then the court should not imply a cause of action if "there is *any* rational reason (even one) to think that *Congress* is better suited to weight the costs and benefits of allowing a damages action to

10

proceed." *Egbert*, 142 S. Ct. at 1805 (cleaned up). And as in *Egbert* and *Tate*, the court concludes that there is certainly at least one "rational reason" why Congress would be better equipped than the courts to determine whether to allow such claims.

First of all, as in *Tate*, "[t]he political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" 54 F.4th at 848 (quoting *Egbert*, 142 S. Ct. at 1804). Indeed, Congress's inaction and failure to provide a damages remedy, particularly where it has enacted sweeping reforms of prisoner litigation, suggest that an extension of a damages remedy for other types of mistreatment should not be judicially created. *See Ziglar*, 137 S. Ct. at 1865 ("[I]t seems clear that Congress had specific occasion to consider the matter of prisoner abuse and consider the proper way to remedy those wrongs" and Congress's declining to provide a "damages remedy against federal jailers . . . suggests [that] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.").

Additionally, courts have long been committed to avoiding judicial intervention in the running of prisons or in matters of security within prisons. As noted, allowing liability for these types of claims opens up BOP officers to significant potential liability for the BOP's decisions about how to discipline inmates and when and under what circumstances it is appropriate to restrain them. This fact, too, counsels against recognizing an implied cause of action for Fields's claims, which—at least according to them—stem from the officials' response to his alleged misconduct. *See Landis v. Moyer*, No. 1:19-CV-470, 2022 WL 2677472, at *7 & n.5 (M.D. Pa. July 11, 2022), *appeal docketed*, No. 22-2421 (3d Cir. Aug. 5, 2022) As explained by the *Landis* court, "excessive-force claims against federal prison officials [ ] squarely implicate BOP policy and are inextricably tied to the preservation of institutional rules and order. Adjudicating

prisoner excessive-force claims would also entangle the federal judiciary in byzantine issues of prison administration and institutional security and would impact BOP operations systemwide." *Id.*

There are other factors, as well, that caution against finding an implied cause of action here. For example, the existence of alternative remedies available to federal prisoners like Fields strongly cautions against an expansion of *Bivens* into a new context. *Ziglar*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). As explained in *Correctional Services Corp. v. Malesko*, a federal prisoner claiming negligence or deliberate indifference has access to "remedial mechanisms established by" the BOP. 534 U.S. 61, 74 (2001). Indeed, "many courts have explicitly recognized that the BOP's administrative remedy program is an alternative process that precludes a *Bivens* remedy." *Scates v. Craddock*, No. 1:17CV22, 2019 WL 6462846, at *8 (N.D.W. Va. July 26, 2019) (collecting authority), *report and recommendation adopted*, No. 1:17-CV-22, 2019 WL 4200862 (N.D.W. Va. Sept. 5, 2019); *see also Silva*, 45 F.4th at 1141 ("[W]e find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.") The possibility of relief under the Federal Tort Claims Act (FTCA) also serves as an alternative remedy that counsels against recognizing an implied damages remedy, even if the FTCA does not "provide the exact same kind of relief *Bivens* would." *Oliva v. Nivar*, 973 F.3d 438, 443–44 (5th Cir. 2020).

As for any retaliation claims, the Supreme Court stated that "[t]here are many reasons to think that Congress, not the courts, is better suited to authorize" a damages remedy for First Amendment retaliation. *Egbert*, 142 S. Ct. at 1807. The Court went on to list the reasons and

rationales, which included the acute risk of increasing substantial societal costs by causing federal employees to be deterred from carrying out their duties in the face of personal liability. *Id.* at 1807–08. The costs are particularly likely to increase with allowing retaliation claims, since such claims rely on retaliatory intent and "may be less amenable to summary disposition." *Id.* (citation omitted). Thus, if damages are to be allowed for such claims, it should be Congress that makes that decision.

For the foregoing reasons, the court concludes that Fields's excessive force and retaliation claims are not cognizable. Other courts, employing similar reasons, are in agreement. As noted, retaliation claims were squarely rejected by *Egbert*. Moreover, following *Egbert*, circuit courts that have addressed the viability of excessive force claims have thus far uniformly concluded that there is no viable *Bivens* claim for excessive force in this context, as have many district courts. *See, e.g.*, *Silva v. United States*, 45 F.4th 1134, 1141–42 (10th Cir. 2022) (holding that the plaintiff did not have an Eighth Amendment *Bivens* claim against a BOP officer for use of excessive force); *Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3–4 (6th Cir. 2022) (unpublished) (same); *Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497, at *3 (3d Cir. 2022) (unpublished) (citing to *Egbert* and concluding that a claim of excessive force against a BOP correctional officer was "not a basis for relief under *Bivens*"); *Jean*, 2022 WL 17969091, at *6 (same); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *4–5 (E.D. Ky. Sept. 30, 2022) (holding that *Egbert* forecloses a cause of action based on an excessive use of force by BOP officers against a prisoner); *Morel v. Dep't of Just.*, No. CV 7:22-015-DCR, 2022 WL 4125070, at *3 (E.D. Ky. Sept. 9, 2022) (same); *Landis*, 2022 WL 2677472, at *7 & n.5 (same and collecting authority); *Bivens v. Blaike*, No. 21-CV-00783-PAB-NYW, 2022 WL 2158984, at *6 (D. Colo. June 15, 2022), *report and recommendation*

13

*adopted,* No. 21-CV-00783-PAB-NYW, 2022 WL 2716533 (D. Colo. July 13, 2022) (same).

## III.  CONCLUSION

For the foregoing reasons, the court concludes that Fields's complaint fails to state a claim for which relief can be granted and must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  Thus, his complaint will be dismissed, and the court will deny his pending motion as moot.  An appropriate order shall be entered.

Entered: January 31, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge